IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DIANA FAYE LEA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21-03094-CV-S-WBG |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Diana Lea's appeal of Defendant Acting Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff was born in 1958 and has a limited education.[2] R. at 140, 147, 435, 451. She previously worked as a cashier, a conveyor tender, and a press operator. R. at 21, 37-38, 50, 65-66, 70-71. In August 2019, Plaintiff protectively applied for disability insurance benefits and supplemental security income alleging a disability onset date of August 1, 2019. R. at 11, 140-53. In December 2019, her applications were denied. R. at 111-16. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 118-19.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for former Commissioner of the Social Security Administration Andrew Saul as Defendant in this suit.

[2] Plaintiff left school after the tenth grade but subsequently obtained a General Educational Development ("GED") certificate. R. at 40, 435, 451.

On September 15, 2020, ALJ Mark Clayton held a telephone hearing during which Plaintiff and a vocational expert testified. R. at 33-80. Thereafter, on October 15, 2020, the ALJ issued a decision finding Plaintiff is not disabled. R. at 11-22. He concluded Plaintiff's severe impairments are "fibromyalgia; degenerative disc disease of the lumbar spine; degenerative joint disease of the bilateral hips; and degenerative joint disease of the bilateral knees." R. at 14. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she can "occasionally climb, stoop, kneel, crouch, and crawl; would need to avoid concentrated exposure to extreme temperatures; would need to avoid even moderate exposure to hazards, things such as unprotected heights and working around dangerous, unguarded, moving machinery." R. at 17.

Based on his review of the record, his RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff can return to her past relevant work as a cashier and press operator. R. at 21-22. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-7, 136-39. She now appeals to this Court. Doc. 3.

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

### III. DISCUSSION

Plaintiff's sole issue on appeal is whether the ALJ properly determined her four-prong cane was not a medical necessity and whether the ALJ's determination that Plaintiff can perform the exertional level of light work in the RFC was proper.[3] Doc. 14 at 13-22. Plaintiff contends that because the definition of light work includes the ability to stand and walk during most of the workday, the ALJ's finding that Plaintiff can meet the exertional demands of light work cannot be sustained in light of her cane usage. *Id*. at 13-14. The Commissioner argues that substantial evidence supports the ALJ's conclusion that a cane was not medically necessary. Doc. 19 at 6. Further, the Commissioner submits the vocational expert testified that Plaintiff could still perform her past relevant work if she required the use of a cane to walk as her prior jobs would not require ambulation and were "stand-in-place" positions. *Id.*

---

[3] Plaintiff's appeal does not address her mental limitations or physical limitations unrelated to the four-prong cane. *See* Doc. 14.

One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004), and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

**A.     Standard for Medical Necessity of Assistive Device**

"The need to use a hand-held assistive device does not itself preclude a claimant's ability to perform light work." *See John B. H. v. Saul*, No. 4:20-CV-04080-VLD, 2021 WL 1192930, at *31 (D.S.D. Mar. 30, 2021). An ALJ must consider limitations resulting from a claimant's use of a cane only if the cane is "medically necessary" or "medically required." *Mya Y. v. Saul*, No. 20-cv-1296 (JRT/LIB), 2021 WL 3023691, at *4 (D. Minn. June 28, 2021). To determine whether "a hand-held assistive device is medically required or medically necessary, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and medical documentation describing the circumstances for which it is needed. . . ."[4] *Id.* (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (internal quotation marks omitted)). A prescription (or lack thereof) for an assistive device is not necessarily dispositive of the presence or absence of medical necessity when determining the RFC.[5] *See Staples v. Astrue*, 329 F. App'x

---

[4] Specifically, whether the assistive device is required "all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *Mya Y.*, 2021 WL 3023691 at *5.

[5] The Eighth Circuit has not addressed what specific documentation a clamant must provide to establish the limitations of a medically required hand-held assistive device. *See id*.

189, 191 (10th Cir. 2009); *see also Murray v. Berryhill*, No. 17-1086-JWL, 2018 WL 2159788, at *2 (D. Kan. May 10, 2018) (observing that although a cane was prescribed and Plaintiff used it "at times," Plaintiff did meet his burden to show medical necessity because there was no evidence establishing that he needed to use the cane all the time, or the circumstances for which it was needed).

**B.     Evidence in the Record**

   **(1)     Relevant Medical Records**

On August 9, 2019, Plaintiff established care with Anthony Alexander, FNP. R. at 370-75. She complained of "bilateral foot" and "joint pain," "moderate" symptoms, and requested referral to a pain management specialist for her fibromyalgia. R. at 370. Dr. Alexander's visual overview of Plaintiff's four extremities was normal. R. at 374. He also noted Plaintiff was "not at risk for falls" and had "not fallen in the last year." R. at 371, 374. Four days later, Plaintiff was seen for her annual physical where, again, it was noted she was "not at risk for falls" and "had not fallen in the last year." R. at 379, 382.

On November 13, 2019, Ted Lennard, M.D., conducted a consultative examination of Plaintiff. R. at 390-400. He noted Plaintiff's chief complaints were pain in her left hip that radiated down her left lower extremity, and pain in both hands, wrists, feet, and knees which is aggravated by standing, walking, and sitting. R. at 393. Plaintiff's gait was described as "slow" with a "subtle limp." R. at 394. Despite this, Plaintiff's straight-leg raises were negative; she had full range of motion in her shoulders, elbows, wrists, spine, hips, knees, and ankles; and she demonstrated a "4+" out of five on both upper and lower extremity strength. R. at 394-95.

On November 19, 2019, Plaintiff presented to Nurse Alexander and Scott Dooley, M.D., for medication management. R. at 409-14. She reported moderate joint pain and fatigue, but was

negative for extremity weakness, back pain, and joint swelling. R. at 411. Plaintiff represented her pain was managed successfully with medication during the day, but she was "[s]till having more pain later into the day and evening." R. at 409. Neither Nurse Alexander nor Dr. Dooley noted abnormalities in Plaintiff's gait. *See* R. at 409-14.

In December 2019, Paul Ross, D.O. reviewed Plaintiff's medical records and opined Plaintiff could return to her past work as a cashier. R. at 92, 105. Specifically, he found Plaintiff could perform light exertional work with postural and environmental limitations. R. at 89-91, 102-04. Dr. Ross acknowledged the few abnormalities on Plaintiff's physical examinations but also noted her fibromyalgia was recently diagnosed and was improving. R. at 91, 104.

On April 20, 2020, Plaintiff had a telehealth appointment with Kelsey Orr, NP, for fibromyalgia pain in her feet. R. at 481-86. She reported the "burning, sharp and throbbing" foot pain was aggravated by "bending, climbing (and descending) stairs, lifting and walking" and was relieved by heat, massage, pain medications and rest. R. at 481. Plaintiff was positive for decreased mobility, joint tenderness, and limping, but negative for joint instability and locking. R. at 482.

On June 3, 2020, Plaintiff presented to Nurse Orr for chronic pain, fibromyalgia, and "psych issues." R. at 468-75. Although Plaintiff complained of back and hip pain, she indicated she uses Tramadol which "helps the most." R. at 468. Plaintiff also complained of "aching" pain, that was aggravated by "bending, climbing stairs, lifting, movement, pushing, walking and standing." R. at 468. She indicated the pain was relieved by massage, medicine, rest and stretching. *Id*. Again, it was noted that Plaintiff was "not at risk for falls" and had "not fallen in the last year." R. at 469.

Also on June 3, 2020, images were taken of Plaintiff's hips and lumbar spine. R. at 476-77, 507. Imaging of Plaintiff's spine revealed moderate L4-L5 and L5-S1 spondylosis with "disc space narrowing." R. at 477. Her right hip showed "[m]ild osteoarthritis" and "[f]emoroacetabular impingement" accompanied by "joint space narrowing." R. at 476. Plaintiff's left hip imaging revealed "[m]ild osteoarthritis" with "joint space narrowing." R. at 507.

On August 18, 2020, Plaintiff again presented to Nurse Orr for hip pain. R. at 509-18. She reported bilateral hip pain aggravated by active movement as well as prolonged standing, squatting, and standing. R. at 509. Plaintiff indicated her pain was relieved by exercise, ice, rest and stretching, and that pain medication "helps some." *Id*. At this appointment, Plaintiff requested a cane "to help with ambulation." *Id*. Nurse Orr noted Plaintiff was "not at risk for falls," she had "not fallen in the last year," and her gait was described as "normal." R. at 510, 512-13. At Plaintiff's request, Nurse Orr prescribed a four-prong walking cane due to "[p]ain in left hip." R. at 520.

**(2)    Plaintiff's Testimony, Subjective Complaints and Function Report**

Plaintiff testified she can perform household chores such as cleaning, sweeping, mopping, making the bed, fixing something to eat, and putting away groceries. R. at 43. She confirmed she can dress and feed herself. *Id*. She can still independently drive, go to church and the grocery store, and visit with her mom. R. at 44-45. Plaintiff testified that she acquired a cane on August 19, 2020, which she uses when she walks long distances. R. at 39. She indicated she could not walk "very far without it." *Id*.

At her psychological evaluation on November 13, 2019, Plaintiff stated she attended Sunday school class and watches television. R. at 403-04. Plaintiff also reported that she prepares her meals, performs household chores on a weekly basis, and "shops as needed." R. at 404. In

support of her disability claim, Plaintiff completed a Function Report on September 16, 2019. R. at 209-16. Relevant to this appeal, Plaintiff reported she "can't stand for very long" because her "feet, legs, knees, hips, become inflamed in pain and it's unbearable." R. at 209. Specifically, she experiences "[s]harp pains in [her] left hip and both knees," which is not relieved by medicine "especially when [she is] walking or active." R. at 216. Plaintiff stated she is "always in pain when doing anything physical with [her] hands or body." *Id*.

C.     **The ALJ's Consideration of the Cane**

Plaintiff argues the ALJ erred by finding her cane was not a medical necessity. Doc. 14 at 13-22. Despite Plaintiff's claims to the contrary, the ALJ's conclusion that the cane is not a medical necessity is supported by substantial evidence in the record. The ALJ considered the entirety of the medical records and opinions, including Plaintiff's subjective complaints, when evaluating the cane usage.[6] As discussed below, he found the medical records generally failed to establish "significant gait abnormalities" precluding Plaintiff from work. R. at 19.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. at 18. He acknowledged Plaintiff's assertion that she can only sit for twenty to thirty minutes, stand for five minutes, and walk approximately 160 feet but noted "the objective medical evidence of record does not support the level of pain, fatigue, and limitations" she alleges. R. at 18-19.

In reaching his determination that Plaintiff's subjective complaints were not entirely consistent with the record, the ALJ relied on the imaging of Plaintiff's lumbar spine, left hip, and

---

[6] Plaintiff's appeal does not raise issue with the ALJ's evaluation of her subjective complaints. *See* Doc. 14.

8

bilateral knees. R. at 19 (citing B1F/37, 81-82 (R. at 291, 335-36) and B8F/2 (R. at 507)). Specifically, he noted the imaging revealed "mild" changes and abnormalities. *Id*. The ALJ also considered objective findings from Plaintiff's examinations. R. at 19. While, at times, the examinations "show[ed] some tenderness," the ALJ noted the examinations generally "reveal[ed] normal gait; movement of all extremities without significant difficulty; no gross motor deficits; no significant edema of the extremities; intact sensory exam; and normal deep tendon reflexes." R. at 19 (citing B1F/25-26 (R. at 279-80), B2F/5 (R. at 374), B5F/4 (R. at 412), B7F/18 (R. at 472)). The ALJ observed Plaintiff did not "exhibit a significant degree of muscle atrophy, persistent paravertebral muscle spasm, significant motor loss, serious reflex abnormality, serious gait disturbance, or significantly reduced range of motion of the spine, hips, or knees." R. at 19.

In addition, the ALJ found Plaintiff's treatment was "conservative, consisting predominately of routine medication management." *Id*. (citing B9E-B10E (R. at 242-43)). He also acknowledged Plaintiff "was recently prescribed a cane as an assistive device by her treating nurse practitioner, the prescription was dated August 18, 2020, which was less than one month prior to the hearing." R. at 19 (citing B10F/2 (R. at 520)). He noted the "physical examinations prior to the cane prescription generally fail to document such significant gait abnormalities which would preclude the claimant from the ability to engage in SGA[7] level work." R. at 19 (citing B1F/25-26 (R. at 279-80), B2F/5 (R. at 374), B5F/4 (R. at 412), B7F/18 (R. at 472)). "In fact, the physical examination on the date the cane was prescribed indicated a 'normal' gait despite some complaints of pain in the hips with range of motion," and the cane was "only prescribed after the claimant presented and specifically requested the device." R. at 19 (citing B9F/2, 5 (R. at 509,

---

[7] "SGA" is substantial gainful activity. R. at 18.

512)).  Furthermore, neither Dr. Lennard nor Dr. Ross opined that Plaintiff required use of a cane to ambulate.

Despite requesting a cane to "help with ambulation," (R. at 509), neither Plaintiff's prescription nor her medical records contain any indication the cane was medically necessary for all walking or standing activities.  Further, the medical records do not indicate how often the cane should be used (i.e., all the time, periodically or only in certain situations) and under what circumstances (e.g., distance and terrain).  Tellingly, Nurse Orr's assessment plan from the August 18 appointment did not include instructions for use of a cane. R. at 513.[8]  For all these reasons, the medical records do not establish a cane was a medical necessity, and thus, the ALJ did not err in his finding consistent with the same.

Even if the ALJ had determined a cane was medically necessary for ambulation and he had incorporated that limitation in the RFC, the ALJ's decision would have remained unchanged.  In posing hypotheticals to the vocational expert, the ALJ specifically included the use of an assistive handheld device for ambulation (cane) in determined whether the Plaintiff's past relevant work would be available.  Tr. at 66, 71-72.  The vocational expert testified that Plaintiff would be able to perform her past relevant work as a cashier and press operator even if she had to use a cane for ambulation as those jobs "would not require ambulation" and were "stand-in-place" positions.  R. at 66-67, 71-72, 76-77.  Thus, even if the ALJ concluded her cane was medically required for ambulation, Plaintiff's past relevant work would still be available, and therefore, she would not be disabled.

---

[8] Nurse Orr prepared a letter dated October 28, 2020, that appears to have been submitted to the Appeals Council. R. at 26-31.  In her letter, Nurse Orr indicated the cane was prescribed on August 18, 2020, "[d]ue to recent falls."  This statement contradicts the medical records from the August 18 visit which indicate Plaintiff is not at risk for falls and that "[t]he patient has not fallen in the last year."  R. at 510, 513.

10
Case 6:21-cv-03094-WBG   Document 22   Filed 08/25/22   Page 10 of 11

On the record before the Court, the undersigned finds that substantial evidence in the record supports the ALJ's determination that the cane was not medically required. The record lacks sufficient medical documentation that established the need for a cane in walking or standing and lacks a description on the circumstances for which it is needed. Moreover, the ALJ, in posing hypotheticals to the vocational expert, included the use of a cane for ambulation. The expert testified her prior work as cashier and press operator would remain available even if a cane was required.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:    August 25, 2022                    /s/ W. Brian Gaddy
                                            W. BRIAN GADDY
                                            UNITED STATES MAGISTRATE JUDGE